Thank you, your honor. If it pleases the court, Frank Watcher on behalf of the appellants Sanjay Patel and Sanjay Patel California General Partnership. The first issue I would like to address... Let me pause a minute, Frank. I don't have you on the screen video. I hear you, but I can't see you. No, I apologize, your honor. I'm only appearing telephonically. Okay, thank you. I didn't realize that. Thank you. Thank you very much, your honor. I'd like to address some of the issues that were brought up in the city's answering brief. And the first issue I would like to deal with is the procedural due process claim. Because I do think in some sense, that's more important claim here from a constitutional standpoint. And the city has brought up the issue... Counselor, I guess you can't see us, right? That's correct. I cannot see the court. Okay, before you get into the law, there's a factual question I have that's not clear from the briefing. Sure. And the question is, does your client, Mr. Patel, allow non-guest truckers to store their trucks on the motel property? My understanding, your honor, is there may be some non-guest truckers who do store their trucks on the property, but that the majority of the truckers are truckers who come and stay at the property, and then store their trucks at the property. But the majority are, but there may be some guests, some truckers who do store there, and who do not stay at the property. And furthermore, the complaint I noticed said both that there were residents and others. So the way I read the complaint, it was kind of alleging that trucks from both categories were on your property. And that's how I understand it, your honor. But I think once again, the majority of the truckers are people who have stayed, who are longstanding clients of the Patels, and that stay there and then store their trucks. And I would note, since the court is initiating the issue on the factual questions, that the CUP, which was originally granted to the motel at page 88 in volume one, one of the grounds given for allowing or for granting the CUP at page 88, subsection D, is, quote, because of the motel's easy access to the Pomona Freeway and the large parking lot, the motel is popular with truckers. So that was even in the very that the motel would be used for truckers coming there and parking their trucks. And I think what we've alleged is that from 1996 until the adoption of the emergency ordinance in January of 20, I believe it was 18, and then the interim ordinance in April of 2018, that the longstanding custom and usage was that the truckers were allowed to store their trucks at the property. There had never been any problem for the Patels at that point. And so one of our contentions is that certainly that custom and usage goes a long way in interpreting what that phrase means in the conditional use permit, that the city had a clear understanding that this was going to be allowed for truck parking, truck parking and storage. With that, if the court allows me, I would like to go into some of the legal issues on the, in particular, first with the procedural due process claim. The city raises an issue as whether there's a cognizable due process interest at issue here. And I believe that's been answered by the U.S. Supreme Court, and it was a case cited in our brief, the Logan versus Zimmerman Brush Company, a 1982 U.S. Supreme Court case. And in that case, that is Logan versus Zimmerman Brush, excuse me, your honor, it's at 455 U.S. 422. It's a 1982 case, and that's on page 21 of the opening brief. Yeah, no, Zimmerman, Logan, I thought you'd used a different name. Yeah, I'm sorry. And so the Logan case decided that the use of adjudicatory procedures, state adjudicatory procedures, is in fact a, in the title, and is in fact a protectable due process interest. And very briefly, what Logan reasoned was that based on the Lane versus Central Hanover Bank, which is a very well known, of course, U.S. Supreme Court due process case, that it's akin to somebody who has a cause of action in state court. And that cause of action is a due process interest that can't be extinguished without due process. The same with the adjudicatory procedures. And so our contention is, is clearly that we have a right to appeal. I don't think that in any way a contention that the city is making that we don't have that right. That right is given under the city of South El Monte Municipal Code. And if that right is somehow impaired or extinguished, that it's subject to due process. And so here are the- Counsel, this issue is being raised in your state appeal as well, is it not? And so- No, it is not. No, it is not. It's not? You're not raising this in the state appeal? No. So when we filed the state appeal and the appeal under the government code and the inverse condemnation claim, and this, my colleague for the city has, is, in fact, now their firm is the council of record for the city and the state action. But when we raised it at the very inception of the case, at the time we filed the complaint, I filed what is called an England reservation, which I'm sure the court knows, but just briefly under England versus Louisiana State Board of Medical Examiners, 375 U.S. 411 at 1964. And I cited a Ninth Circuit case, United Parcel Service versus California Public Utilities at 77 F3rd 1178-1184. It's a 1996 Ninth Circuit case. That allows us under both the Supreme Court and the United States Supreme Court to close our federal claims and litigate our federal claims in the state court. Then those claims come back to the federal court and are not, there's no race judicata in state court terms or claim preclusion effect for purposes of our 1983 action. So no, we are not raising the due process interest argument in before the state court. With respect, your honor, to the, the issue of what controls here, whether in fact, Perry V. Taylor or Logan controls, Logan has an extensive discussion, but it was, it was brought up in the non-bond case that I cited in my brief, Brexler's and Kelman. And that was a malicious prosecution case of the 1983. But the same issue was whether the state adjudicatory procedure, state procedures, rather than being able to claim a due process, procedure due process claim under 1983. And what Brex decided, but it was based on Logan and Logan decided was that Perry V. Taylor does not have any application where you are claiming, where the party is claiming that the actual procedures themselves are defective, that there's some unauthorized action by some errant government employee, which case then the government has no option. They have no way of protecting themselves. And then one has to go through the state tort procedures under Perry V. Taylor, but that's not the case here. It's clear that what we're arguing here is that the state, the city's appeal procedures are such that they unilaterally pick the hearing officer. They pay the hearing officer. They're doing it on a regular basis. It's the same hearing officer. And that raises at least at a minimum an issue of an appearance of a violation of due process or an appearance of bias. And I cited the Haas case. That of course is not binding on this court, but it's certainly logically persuasive, but I believe the very same issue came up before the California Supreme Court where there were County of San Bernardino hearing officers who were being paid and unilaterally picked by the County of San Bernardino. And that was found to be a violation of the due process clause for an appearance of a bias. We of course are alleging, and I believe it's clearly stated in a second amendment complaint, that this hearing officer in fact was biased. That of course is a factual issue, but clearly I think the Logan and the Brett C. Kelman line of cases is what's controlling, not Perry V. Taylor. And so to that effect, I don't believe Lake Nascimento case is binding in this particular case. And I also believe it's not good law anymore. Counsel, you're spending all your time on the procedural due process, and I have some serious questions on your takings claim. Sure. So the takings claim, I would just indicate, of course, the decision now allows us in the federal court, but there was an issue about number one, we have, if the court will look at page 73 of the volume, one of the exit to record, we're also raising a facial takings claim that is not subject to a ripeness requirement. Because what you're saying is the enactment of the statute, not as applied to the party is, or as the particular ordinance or statute applied is what is that issue? And whether that enactment in fact constitutes the taking. But secondly, even if we do have a rightness issue, that rightness issue is not something that should have thrown it out of court because we have argued and it's alleged in the complaint that the, he did try to get Mr. Patel tried to get him a hardship exemption. He went down to the city. He was met by a council, a planning commissioner, Joe Martinez, who told him he would not get a hardship exemption unless he gave up his right to the CUP to run a motel. So in rightness, what you're looking at and what still survives Nick is how the ordinance would be applied to the particular property. And in that particular case, I think what we have is at least the tribal issue. So what I'm referring to is even after Nick's, our court in Pactel said that in order for the case to meet the finality requirement, which I think you're referring to as rightness, but it's finality, the government agency has to make a final decision and the plaintiff must meaningfully request and have been denied a variance permits or actions. Does your client's meeting with this councilman satisfy the Pactel standard? I think it does your honor in the sense that there is a futility exception. And in fact, the city has already declared at least for the hardship exemption provision of the interim ordinance that they were not going to give it to him. Then in fact, you do have already a decision in a practical sense of how they were going to apply it. So there is a futility exception under the finality requirement. It's akin to an administrative exhaustion, exhaustion, administrative remedies doctrine, where you have to exhaust your administrative remedies before coming to court. But in fact, if it's futile to exhaust it, that doctrine does not apply. So I think that rightness is at least a factual issue here. And as I said, your honor, a facial challenge does not require rightness. I have a Ninth Circuit case, but I don't think I want to cite it since I did not cite it in my brief. And I don't think it would be fair to council to do something. Do you agree that rightness is a prudential matter, not a jurisdictional matter? That's correct. In fact, Nick discusses extensively, even under the just compensation clause, even before Williamson County was overturned with respect to exhausting state procedures, it was always decided. The Supreme Court long time decided, I believe it was the Sweden case. That may have been, I believe, cited by my colleague on the other side. But the Sweden case talked about the fact that Williamson County was always only a prudential requirement. It is not a subject matter article three type of requirement. So it only goes to prudential jurisdiction, not to subject matter jurisdiction. Can I ask you one more question, counsel, about your, is your state case still pending? Yes, it is your honor. And we are going to have a status conference and a motion hearing on Wednesday before the court. And there's a motion pending to dismiss my appeal of the ticket because of the fact that we had a briefing schedule and I did not file my opening brief. And for reasons of family medical issues during the pandemic, but either way, there's going to be a, I believe a setting of a trial on the inverse condemnation action. This is the question I'm interested in is, you no longer have a requirement to exhaust and state court under Nick, right? Correct. If you're nevertheless doing that, right? Uh, so, um, that, that brought up an interesting issue because of the fact that, uh, the district court, uh, dismissed the claim. And I was worried about the issue of, uh, some, some kind of a statute of limitations. I filed that as a matter of caution. I would say that I may very well dismiss the inverse condemnation claim for, for, for other reasons, uh, because this circuit has found that a California state inverse condemnation claim, uh, the state constitution is congruent to the federal fifth amendment takings clause. And there was a case San Remo hotel, motel San Remo hotel versus city and County of San Francisco, where another council litigated a hotel matter, uh, on a takings claim, uh, was upstate. They, the ninth circuit abstain told him to go to state court. He went to state court, did a great job, lost four to three in the California Supreme court, then came back even with a England reservation. Uh, and I believe judge Fletcher wrote the opinion, uh, said that, no, it was congruent. And, uh, because it was congruent, the same issues were litigated to finality. Uh, therefore he lost the fifth amendment takings claim, took it up, got reviewed by the, by the Supreme court and lost, I believe nine to zero, unfortunately. So I, I'm most likely going to, if the court is going to remand the fifth amendment claim, uh, I'm most likely going to, uh, dismiss the inverse condemnation claim, uh, without prejudice. Um, so, um, uh, but there has been no decision, not even a trial set. There's going to be a trial setting conference on Wednesday. Okay. Um, I was going to very briefly address the protection first amendment. I see my time may have been, may have, uh, I've overran my time. If the court would give me a few minutes. Pardon me. I didn't hear you. I'm just letting judge Ward know that she's on mute. I think she started ringing. So I didn't want you guys to hear that. Sorry. I was trying to say you're well over your time. We'll give you a minute at the end, but it's time for, um, a council for the city of El Monte to make a presentation. Thank you. Good afternoon. Your honors may it please the court, Alison flowers about Cheyenne winder on behalf of the city of El Monte. Before I get into my overarching argument, I'd like to address some of the points made by my colleague, Mr. Weiser. Now, George, you raised whether or not, uh, both guests and customers are allowed to store their trucks on the property. And I think that's a fundamental distinction in this case. The second amended complaint notes in several places that there are both motel guests and customers that store their trucks on the motel parking lot. And it's the storage of trucks, which is really at issue with the city. If you look at the original notice of violation, it doesn't say get rid of all trucks on the parking lot. It states it's a violation for stored trucks. And it's a violation of the municipal code provision that restricts outdoor business operations. So it's not the parking of motel guests. That's an issue. It's the other customers to just store their trucks on the motel parking lot. What was he cited for? What were the hotels cited for? Actually, was it for, I mean, is the city taking the position that he cannot have his guests truckers leave their trucks overnight in the motel? The city's position is that he cannot have a storage operation for people that aren't staying at the hotel or the motel. So he was cited for a violation of the municipal code 17.14.200, which states essentially that business operations in the commercial zone have to be conducted indoors with certain exceptions that do not apply to Mr. Patel's motel. He was also cited for violation of the ordinance at issue 1222-U, which prohibits the storage of automobiles under the ordinance. So the both provisions are for storing automobiles on the parking lot, not simply having guests that are truckers staying at the motel. And each of the trucks and buses at the hotel or the motel. And if you look- And counsel, we gather that because the notice simply says for storage. So that's where your argument is predicated on the word storage, meaning not guests, but for some other purpose. Right. It states remove all stored buses and trucks from property. And if you look at the May 3rd, 2018 notice, which is at page 117 of the excerpts of record, it's admittedly a bit hard to read, but there's handwritten language that says verified license plates match same vehicles from date of original notice. And this is about three months later. So the issue for the city is not guests parking their vehicles at the motel, but people that aren't staying at the motel and simply storing their trucks and their buses at the motel. And I think the second amended complaint makes that distinction a little bit vaguely, but it does make a distinction throughout the second amended complaint. I'd also like to correct counsel's statement that the state complaint is not appealing the administrative hearing. The third cause of action in the state complaint is specifically based on government code 536.9.4 to appeal the administrative hearing related to the last citation. So I think that's, I don't want to say misrepresentation, but an inaccurate statement made by counsel, because there is a specific cause of action related to that. I'd also like to point out that the England reservation that counsel made is not in regard to that cause of action, but in regard to the takings claim. So it's specifically alleged in the second cause of action for the takings claim. What do you have to say about the first argument, the fact that the hearing, the procedural due process argument? Well, I don't think the Logan case specifically addressed the issue that we have here, which is that there was an administrative hearing, there are sufficient state court procedures to address it, and counsel has not actually proceeded with those state court procedures. Is that, are you saying that because they could have a de novo trial, that solves the problem? I think that provides due process, yes. That's your argument? There is case law contrary to that, is there not? Are you referring to the Clements case? Among others, I think, yes. Well, I think the Clements case, it does state that, but that case is, I think, factually and procedurally different from where we are here. That case was very specific to employee terminations versus administrative hearings for a citation. And the plaintiffs in that case did actually proceed with their state remedies before proceeding in federal court. And counsel, Clements expressly said that a claim of bias cannot be cured by a subsequent state, the availability of the subsequent state proceeding. But I think that case was limited to those, that particular situation of a pre-termination versus post-termination employment, rather than the factual situation that we have here. I think if you look at the Lake Nacimiento Ranch Company case, it's a little bit more akin to what we have here. Appellants are alleging that there was bias in the administrative hearing officer. And in Lake Nacimiento, the plaintiffs were alleging that there was bias in one of the council members who shouldn't have, who should have recused himself and not decided the issue. And in that case, the Ninth Circuit applied the Peratt holding and said that because there that the plaintiffs should have pursued those. If you look at the, sorry. No, I was just going to say, there's also a U.S. Supreme Court case. Isn't there Ward v. Monroeville? I'm not familiar with that case. I don't know if there's a difference in the actual type of case, so I can't necessarily address it. But I do think the cases that we cited in our brief, and there are subsequent central district cases or southern district cases, which obviously are not binding on you, that apply it in the same context as we are asking the court to apply it here. So I think because there are ongoing state court proceedings on the same grounds, which will adequately address any alleged due process violation in the administrative hearing, plaintiffs should proceed with those state court proceedings. What if he dismisses those state court proceedings? I think the outcome would be the same. I think because those state court remedies through code of civil procedure 1094.5 and government code 536.9.4 are adequate remedies for any alleged due process in the administrative hearing process. Those are his remedies not to move forward in federal court. I'd also like to note that the Haas case cited by counsel, I think supports our position as well. While the Haas case does state that there could be bias in the city hiring and paying for an administrative hearing officer, the procedural facts of that case was that it was presented on a petition for writ of mandate under, I believe, code of civil procedure 1094.5. It wasn't brought in federal court. And I do believe, turning to the Takings claim, that the Pactel case is applicable here. It's a similar factual situation, while obviously the regulations at issue are different, but there is a hardship exemption in both our case and in the Pactel case. And appellants have not fulfilled that requirement of seeking the exemption and having it be denied. Now, appellants referred to a conversation with a planning commissioner who said, well, you're not going to get it, you know, but I don't think that is sufficient. One, because a planning commissioner statement cannot be attributed to the city council who makes the decision on the hardship exemption. And even in Williamson County, when the issue of futility was raised, the court said, okay, you can raise the issue of for denial on two different plans. The Williamson County case said you have to submit both types of plans to the city for denial in order to plead futility. And in the second amended complaint, while it's raised here for the first time, there are no allegations of futility in any of the three complaints. So I think council has waived that argument by not alleging it in the second amended complaint, not raising it earlier. Well, isn't it still a question of fact on whether that's tantamount, whether the request to the planning commission is tantamount to a meaningful request for an exception? I don't think so because the way it's phrased in the second amended complaint, it's a conversation with the planning commissioner. What the hardship exemption under the ordinance requires is an application to the community development director, which then goes to the city council for decision. And nowhere in the second amended complaint have appellants alleged that they took any of those steps. Instead, they specifically alleged that they didn't file the application. So are you arguing that there was no final decision as to whether Mr. Gautel's operation violated the ordinance? I think there's no final decision as to whether he could proceed under the ordinance in the way that he wishes. There's no denial of his hardship exemption application, which is factually similar to the Pactel case. But I'd also like to know... Even if we're dealing with the fact that this planning commissioner is not, the council was not the decision maker, he apparently is somebody who knows what's going on. Would not his warning that if you apply for this, you're going to lose your original exemption, wouldn't that be considered a pretty strong chilling of proceeding? I don't think so. The only thing that could happen if you proceeded with an application for a hardship exemption is the denial of the application. Oh no, I think what he was being told by this planning commissioner was you could lose your very original exemptions. Well, what the second amended complaint states is that he said the only way it's going to be granted is if you revoke your CUP. Couldn't you just resolve this case by having your client give Mr. Pactel a hardship exemption? Well, that turns to my third point regarding the takings claim. The appellants have not alleged and cannot allege a loss of all economically viable use of the property because they're operating the property as a motel. That's the primary purpose of the property. It's the permitted purpose of the property. And under the hardship exemption, they have to show that there's going to be a loss of all economically viable use of the property. And he cannot show that because all the city is doing is preventing him from operating an illegal storage business. The ordinances that issue, the municipal code, they don't prevent him from operating the motel at all. His operation of the motel is in no way impacted. It's his illegal storage of buses and trucks that's impacted by the ordinance. So I don't think even if he can move past Nick and Williamson County and Pactel, he cannot allege a loss of economic use of the property because he's continuing to operate it as it is supposed to be operated. You're saying that's an essential due process takings argument that has to be proved? I don't think it has to be proved. I think it has to be alleged. And he cannot allege that because he continues to operate as a motel. He's permitted to operate as a motel, and that's what he's doing. But he's also got a side business of storing trucks and buses illegally. And that's what's in violation of the municipal code. And that's what's in violation of the ordinances. Now, we've only talked about the procedural due process and the takings claim. Is there anything in regard to the First Amendment or the Equal Protection Claim that you would like me to briefly address? Not me. No, not me. Then I suppose I will waive the rest of my time. All right. Thank you, Council. Okay. Mr. Weiser, I'll give you a couple minutes. Okay. I appreciate it very much, Your Honor. I'll be very brief. Just first of all, I believe there's some factual misunderstandings here between Council and my colleague, myself. The England Reservation was a general England Reservation. That was filed on September 4th in 2018. It was just a general England Reservation that I do any time I'm forced to go into state court, either abstention or other reasons. So it was that. Number two, we never said that the not going to include under the England Reservation federal claims. Now, the issue of the alleging in the complaint and whether it was stored trucks that he was cited for or not, that's a factual issue. And in fact, I alleged in the complaint that the code enforcement officer came on multiple times, asked to see the motel register, which of course is prohibited now under the Patel case, City of LA versus Patel case that came out of the circuit. And that because he was asking to see, in fact, whether those truckers were staying at the property. So at the administrative appeal hearing, I raised that. That's in the administrative record. The hearing officer taped it. And that's in there where I said that there was not proof that these truckers were in fact that he was being cited for were truckers who were only storing the trucks. And the city had not met the burden. So those are factual issues. I would indicate that the procedure due process claim there was no discussion by counsel of the Bretski-Telman case, no discussion of Logan, no discussion of the two different lines of cases. And with that, I would submit. All right. Thank you very much, counsel. This session of the court is adjourned for today. Thank you. This court for this session stands adjourned.
judges: Ebel Wardlaw, Hunsaker